IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

J & J SPORTS PRODUCTIONS, INC.                                                    PLAINTIFF

v.                              Case No. 4:17-cv-00277-KGB

MIGUEL A. RAMIREZ, *et al.*                                                        DEFENDANTS

**OPINION AND ORDER**

Before the Court is motion for summary judgment filed by plaintiff J & J Sports Productions, Inc. ("J & J Sports") (Dkt. No. 15). In the complaint, J & J Sports alleges that defendants Miguel A. Ramirez and MNK Inc. d/b/a MNK Arkangel Event Center (collectively the "MNK defendants") willfully violated the Communications Act of 1934, as amended, 47 U.S.C. §§ 605, *et seq.*, and the Cable & Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. §§ 553, *et seq.* (Dkt. No. 1). Specifically, J & J Sports alleges that the MNK defendants unlawfully intercepted, received, published, divulged, displayed, and/or exhibited a sports program, "The Fight of the Century," Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight Program (the "Program"), to which J & J Sports was granted the exclusive commercial distribution rights (*Id.*, ¶¶ 11, 16). J & J Sports moves for summary judgment on its claim under the Communications Act (Dkt. No. 15, at 15). The MNK defendants have responded to the motion, and J & J Sports replied (Dkt. Nos. 21, 25). For the following reasons, the Court denies J & J Sports' motion for summary judgment.

**I.     Background**

J & J Sports filed a statement of material facts in support of motion for summary judgment (Dkt. No. 15-2). The MNK defendants filed a response to J & J Sports' material facts in support of motion for summary judgment (Dkt. No. 23). In the MNK defendants' response, they deny

several of the facts stated by J & J Sports without providing a record cite upon which to base their denial (*Id.*, ¶¶ 1, 2, 9, 13, 14, 17). Pursuant to Local Rule 56.1 of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas, all material facts set forth in the statement filed by the moving party shall be deemed admitted unless controverted by the statement filed by the non-moving party. Further, failure to support or address properly the moving party's assertion of fact can result in the fact being considered as undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). Unless otherwise noted, the following facts are taken from J & J Sports' statement of material facts in support of motion for summary judgment.

The Program was telecast nationwide on Saturday, May 2, 2015 (Dkt. No. 15-2, ¶ 1).[1] J & J Sports was granted the exclusive commercial distribution rights to the Program (*Id.*, ¶ 2).[2] J & J Sports' distribution rights encompassed all undercard events as well as the main events and all color commentary (*Id.*).[3] At all relevant times, MNK Inc. owned and operated the commercial establishment doing business as MNK Arkangel Event Center ("Event Center"), operating at 7020 Colonel Glenn Road, Little Rock, Arkansas 72204 (*Id.*, ¶ 3). At all times relevant hereto, Mr. Ramirez was the President and Registered Agent of MNK Inc. (*Id.*, ¶ 4). Mr. Ramirez is an officer

---

[1] The MNK defendants attempt to dispute this statement by denying it, with no cite to record evidentiary support for their denial (Dkt. No. 23, ¶ 1). Therefore, the Court finds that this fact is undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

[2] The MNK defendants attempt to dispute this statement by denying it, with no cite to record evidentiary support for their denial (Dkt. No. 23, ¶ 2). Therefore, the Court finds that this fact is undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

[3] The MNK defendants attempt to dispute this statement by denying it, with no cite to record evidentiary support for their denial (Dkt. No. 23, ¶ 2). Therefore, the Court finds that this fact is undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

of MNK Inc. and specifically identified on the Arkansas Secretary of State Fictious Name Entity Information Sheet issued for MNK Inc. (*Id.*, ¶ 5). At all relevant times, Mr. Ramirez was an owner and manager of the establishment and an officer of the entity owning the establishment (*Id.*, ¶ 6). Mr. Ramirez was inside the establishment on the day and night of the Program (*Id.*, ¶ 7). He had a 100 percent ownership interest in MNK Inc. and the establishment on May 2, 2015 (*Id.*, ¶ 8).

The MNK defendants intercepted, received, published, and/or exhibited the Program at the commercial establishment doing business as the Event Center (*Id.*, ¶ 9).[4] According to the affidavit of Joseph M. Gagliardi, President of J & J Sports Productions, Inc., "[a]t no time did J & J . . . sublicense the Program to Defendant Miguel A. Ramirez, individually and d/b/a MNK Arkangel Event Center and/or MNK Inc., . . . or their establishment . . . ." (Dkt. No. 15-4, ¶ 2). According to Mr. Gagliardi, the Program "was observed as being unlawfully exhibited by the establishment doing business as MNK Arkangel Event Center. At no time did MNK Arkangel Event Center ever lawfully license the Program from J & J Sports Productions, Inc. for such a purpose." (*Id.*, ¶ 7). The Program was shown at the Event Center, and patrons of the establishment were informed that it would be shown (Dkt. No. 15-2, ¶ 12). The commercial fee to broadcast the Program for an establishment the size of the Event Center was $6,000.00 (*Id.*, ¶ 13).[5] The Program was observed

---

[4] The MNK defendants attempt to dispute this statement by denying it, with no cite to record evidentiary support for their denial (Dkt. No. 23, ¶ 9). Therefore, the Court finds that this fact is undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

[5] The MNK defendants attempt to dispute this statement by denying it, with no cite to record evidentiary support for their denial (Dkt. No. 23, ¶ 13). Therefore, the Court finds that this fact is undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

being displayed at the Event Center by investigator David Hall (*Id.*, ¶ 14).[6] On May 2, 2015, the Event Center had satellite television service (*Id.*, ¶ 15). The Event Center advertised that the Program would be shown on social media outlets (*Id.*, ¶ 16). The Event Center required a $35.00 cover charge for entry (*Id.*, ¶ 17).[7]

The MNK defendants attached to their response a copy of an Arkangel Event Center Rental Contract signed by Gregorio Romero on April 6, 2015, for an event that took place on May 2, 2015 (Dkt. No. 22-1). They also attached to their response a copy of a receipt for $2,600.00 for services provided (Dkt. No. 22-2). The receipt states, "This is for the cost of the rental agreement of the event center for May 2, 2015 from 10pm-2am rented by Mr. Gregorio Romero. This is for both the security deposit and the rental fee of the facility per the contract." (*Id.*).

## II. Request To Exclude Documents From Consideration

J & J Sports objects to two documents that the MNK defendants attached to their response to the motion for summary judgment (Dkt. No. 25-1, at 1). Specifically, J & J Sports argues that the Arkangel Event Center Rental Contract and a receipt from a rental agreement between Mr. Ramirez and Mr. Romero to rent the Event Center from 10:00 p.m. to 2:00 a.m. on May 2, 2015, should be excluded (the "Documents") (Dkt. Nos. 22, Exs. 1, 2; 23, Exs. 1, 2).

---

[6] The MNK defendants attempt to dispute this statement by denying it, with no cite to record evidentiary support for their denial (Dkt. No. 23, ¶ 14). Therefore, the Court finds that this fact is undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

[7] The MNK defendants attempt to dispute this statement by denying it, with no cite to record evidentiary support for their denial (Dkt. No. 23, ¶ 17). Therefore, the Court finds that this fact is undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

J & J Sports argues that the Documents should be excluded because it received a copy of the Documents for the first time on June 4, 2018 (Dkt. No. 25-1, at 1). J & J Sports further argues that it agreed to a continuance for the MNK defendants to respond to the motion for summary judgment but did not waive any objection to the admissibility of previously undisclosed information (*Id.*, at 2). J & J Sports contends that the Documents fall under the information required to be identified under Federal Rule of Civil Procedure 26(e)(1)(A)(ii) because the Documents support the MNK defendant's argument that they are not liable for the acts of Mr. Romero (*Id.*).

Under the Federal Rules of Civil Procedure, each party must "supplement or correct its disclosure or response . . . in a timely manner . . . if the additional or corrective information has not otherwise been made known to the other parties during the discovery process . . . ." Fed. R. Civ. P. 26(e)(1)(A). In the event a party fails to supplement its discovery responses, "the party is not allowed to use that information . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In determining whether a Rule 26 violation is "justified or harmless," the Court is directed to consider: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Rodrick v. Wal–Mart Stores E., L.P.,* 666 F.3d 1093, 1096 (8th Cir. 2012) (internal citations and quotations omitted).

According to the interrogatory responses from MNK defendants that J & J Sports attached to its motion for summary judgment, the MNK defendants listed "$2,000.00 rental fee plus a $250.00 security deposit" as the only source of income or revenue derived on Saturday, May 2, 2015, and Sunday, May 2, 2015 (Dkt. No. 15-3, Ex. 3, at 2). The MNK defendants also stated that

"Mr. Gregorio Romero rented the facility for May 2, 2015," when instructed to identify any person who was a licensee of the Event Center on May 2, 2015 (*Id.*). Based on the record before the Court, at this time, the Court concludes that J & J Sports was not surprised or prejudiced by the MNK defendants attaching the Documents to their response to the motion for summary judgment because J & J Sports was made aware of the rental agreement and the identity of Mr. Romero when the interrogatories were completed on December 20, 2017. For the second factor, based on the record evidence before the Court and the parties' arguments to date regarding this evidence, it does not appear that the MNK defendants need an opportunity to cure any prejudice purportedly resulting from the disclosure of these Documents because, on the record before it, the Court concludes that J & J Sports was not prejudiced by the Documents. For the final two factors, the introduction of the Documents did not cause any disruption because J & J Sports was or should have been already on notice about the information in the Documents and because there is no record evidence before the Court that the MNK defendants acted in bad faith or with willfulness. For these reasons, at this time and on the record before it, the Court concludes that the MNK defendants did not violate Rule 26 with this disclosure, and the Court will not exclude the Documents under Rule 37(c)(1).

J & J Sports also argues that the Documents should be excluded on the grounds of lack of authenticity and hearsay. It is well settled that a party may not defeat a motion for summary judgment by relying solely on inadmissible hearsay. *See, e.g.*, *BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC*, 706 F.3d 888, 900 (8th Cir. 2013); *Guest v. Shell*, No. 4:12CV00336 JLH, 2013 WL 1089039, at *4 (E.D. Ark. Mar. 14, 2013). However, the standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be presented at trial in an admissible form. *Gannon Int'l, Ltd. v. Blocker,* 684 F.3d 785, 793 (8th Cir.

2012). Rule 56 of the Federal Rules of Civil Procedure permits a party to object to evidence cited by the other party at the summary judgment stage and requires the Court to make a determination regarding whether the evidence could be presented at trial in an admissible form. *See* Fed. R. Civ. P. 56(c)(2). The Court finds that these Documents could be properly authenticated, among other ways, with a supporting affidavit or testimony. Further, through supporting affidavits or testimony, the MNK defendants could establish that these Documents meet the requirements of records of a regularly conducted activity and, therefore, are an exception to hearsay. *See* Fed. R. Evid. 803(6). The Court will consider these Documents at the summary judgment stage.

### III. Summary Judgment Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**IV.     Discussion**

J & J Sports moves for summary on its claims relating to § 605 and requests that liability be found under § 605 because evidence supports a satellite violation, as opposed to requesting that this Court consider an alleged violation of § 553 at this stage of the proceedings. J & J Sports contends that there is no genuine issue of material fact regarding whether the MNK defendants unlawfully intercepted, received, or published the Program at the Event Center (Dkt. No. 15-1, at 2). Further, because J & J Sports contends that summary judgment is proper on its § 605 claims, J & J Sports also argues that it is entitled to statutory damages and enhanced damages (*Id.*, at 9).

**A.     Violation Of § 605**

Section 605 states in pertinent part that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). "Any person aggrieved by any violation of subsection (a) of this section may bring a civil action" in district court. 47 U.S.C. § 605(e)(3)(A). The statute defines a person aggrieved to "include any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming . . . ." 47 U.S.C. § 605(d)(6).

The language of this section refers to "radio communication" which courts have interpreted to include satellite transmissions. *See, e.g., Kingvision Pay Per View, Ltd. v. Williams*, 1 F. Supp. 2d 1481, 1484 (S.D. Ga. 1998). While § 605 is "generally interpreted to prohibit commercial establishments from intercepting and broadcasting satellite and cable television programming," *J & J Sports Prods., Inc. v. Perez*, 2014 WL 3805818, at *2 (N.D. Ill. Aug. 1, 2014), "the plain text

8

of both § 605 and § 553 prohibits far more than mere interception." *J & J Sports Prods., Inc. v. Vega*, Case No. 5:15-cv-5199, 2016 WL 4132290, at *3 (W.D. Ark. Aug. 2, 2016). "Section 605 also prohibits 'divulg[ing] or publish[ing]' information gleaned from unauthorized signal reception, or otherwise using that information for one's 'own benefit or for the benefit of another not entitled thereto.'" *DirecTV, Inc. v. Webb*, 545 F.3d 837, 848 (9th Cir. 2008) (quoting 47 U.S.C. § 605).

To prove a violation of § 605, a plaintiff need only show that: "(1) the event or program was shown in the defendant's establishment and (2) plaintiff did not authorize the exhibition of the event or program there." *Joe Hand Promotions, Inc. v. Shepard*, Case No. 4:12-cv-1728 SNLJ, 2015 WL 1976342, at *8 (E.D. Mo. April 30, 2015).

J & J Sports argues that its program was intercepted, received, or published in violation of § 605 and that it is a person aggrieved under the statute (Dkt. No. 15-1, at 2). J & J Sports further argues that it did not authorize the MNK defendants to intercept, receive, exhibit, or otherwise broadcast the Program (*Id.*, at 4). Based on the evidence before the Court, there is no genuine issue of material fact in dispute that J & J Sports had exclusive broadcasting rights to the Program, making it the aggrieved person under § 605. The record also shows that there is no genuine issue of material fact in dispute that the Program was shown at the Event Center on May 2, 2015, despite the fact that the MNK defendants were not authorized by J & J Sports to show the Program. However, the MNK defendants argue that they did not intercept the Program or benefit financially from the showing of the Program (Dkt. No. 22, at 2). The MNK defendants further argue that Mr. Romero rented out the Event Center for May 2, 2015, and that he is the proper defendant for this litigation (*Id.*, at 2-3).

Other district courts have found that, for both an individual and an entity to be held liable under § 605, plaintiff must show supervisory capacity and control over activities occurring at the place of business, as well as receipt of a financial benefit from those activities. *See J & J Sports Prods, Inc. v. Diaz De Leon*, Case No. 2:11-cv-02051, 2012 WL 79877, at *2 (W.D. Ark. Jan. 11, 2012) (finding that personal liability against an individual defendant was appropriate based upon the allegations that he had supervisory capacity and control over, and received a financial benefit from, the activities occurring within his establishment where the violation took place); *see also J & J Sports Prods, Inc. v. Betancourt*, Case No. 08-cv-937 JLS (POR), 2009 WL 3416431, at *2 (S.D. Cal. Oct. 20, 2009) (finding plaintiff's complaint properly pled vicarious liability by alleging that the individual defendants were the owners and operators of the establishment where the violations took place, with oversight and management responsibilities); *Joe Hand Promotions, Inc. v. Ewer, et al.*, Case No. 09–C–612, 2009 WL 3269658, at *1-*2 (E.D. Wis. Oct. 8, 2009) (finding individual who was officer, director, shareholder, and/or principal of corporation who operated bar personally liable in his individual capacity under § 605 for bar's unlawful interception and exhibition of pay-per-view UFC fight, where he admitted by default that he had control over interception and received financial benefits therefrom) (citing *J & J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008)).

Other district courts have applied this analysis in cases where a defendant who owns the establishment purports to lease or rent the establishment to another, beyond his supervision, when and where the alleged violation occurred. *See Kingvision Pay-Per-View Ltd. v. Brito*, Case No. 05 Civ.1042(GBD), 2005 WL 1765710, at *2 (S.D.N.Y July 25, 2005) (finding that a defendant who leases out the location where the violation occurred to a tenant "may be held vicariously liable if he had the right and ability to supervise the infringing activities and possessed a financial interest

in the exploitation of the copyrighted material"). Even under such circumstances, courts have determined that a corporate officer "who has the ability to supervise [the intercepting] activity and has a financial interest in that activity, or who personally participated in that activity, is personally liable for the [interception]." *Joe Hand Promotions, Inc. v. Kaczmar et al*, Case No. 08 C 2910, 2008 WL 4776365, at *1 n.1 (N.D. Ill. Oct. 29, 2008) (alterations in original) (internal quotations omitted).

In its reply, J & J Sports argues that the MNK defendants, as the operator of the Event Center, are still liable for violations under § 605 even if a group rented out the Event Center, as the MNK defendants contend (Dkt. No. 25, at 3-4). J & J Sports does not cite the Court to any relevant or binding authority in support of its argument. J & J Sports further argues that the rental agreement between the MNK defendants and Mr. Romero and the receipt based on the agreement establish liability for the MNK defendants (Dkt. No. 25, at 4). Specifically, J & J Sports contends that the rental agreement was for an event to take place at the Event Center between 10:00 p.m. and 2:00 a.m. on May 2, 2015, as stated in the rental agreement and the receipt (*Id.*). According to the affidavit of Mr. Hall, he observed the undercard fight being shown at the Event Center at 9:12 p.m. (Dkt. No. 15-5, at 3). J & J Sports contends that this undisputed record evidence shows that the MNK defendants are liable for a violation of § 605 because they showed part of the Program before Mr. Romero's event began at 10:00 p.m. (Dkt. No. 25, at 4). J & J Sports further argues that the MNK defendants are liable because the rental agreement includes an indemnity provision that shows the MNK defendants contemplated that they may be sued and that does not absolve them of liability in this case (*Id.*, at 5).

Based on the record evidence before the Court at this time, construing all reasonable inferences from the evidence in favor of the MNK defendants as this Court is required to do, the

Court concludes that there are genuine issues of material fact in dispute regarding whether the MNK defendants may be held liable for any actions of Mr. Romero that purportedly violated § 605. The MNK defendants entered into a rental agreement with Mr. Romero for Mr. Romero to host an event at the Event Center from 10:00 p.m. to 2:00 a.m. on May 2, 2015. Mr. Ramirez admits that he was in the Event Center while the Program was being shown on the relevant date. However, there is no evidence regarding Mr. Ramirez's involvement with the authorization to acquire the Program from J & J Sports. Beyond the fact that Mr. Ramirez was at the Event Center while the Program was being shown, the record before the Court at this time does not show that Mr. Ramirez exercised supervisory capacity and control over activities occurring at the place of business. According to the receipt, Mr. Romero paid Mr. Ramirez the rental fee and refundable deposit, a total of $2,600.00, on April 6, 2015. However, there is no record evidence that the MNK defendants received any profits that were made from the cover charges that guests paid to view the Program at the Event Center. Because the record is not clear regarding Mr. Ramirez's supervisory capacity and control over activities occurring at the Event Center, the Court concludes that there is a genuine issue of material fact in dispute regarding the MNK defendants' alleged liability for a violation of § 605.

Even though J & J Sports argues that the rental agreement only covered the event from 10:00 p.m. to 2:00 a.m. on May 2, 2015, there is no provision in the contract that says it is limited to that time frame. The rental agreement also includes a provision that states, "Personnel to assist during the event between 6pm-1am." (Dkt. No. 22-1, at 1). Based on this provision, the rental agreement also may cover conduct beginning at 6:00 p.m. on the day of the event. The record evidence is not clear on this point.

J & J Sports also argues that the indemnity provision shows the MNK defendants were aware that they may be sued in the future and that it does not absolve them of liability. The Court declines to find that an indemnity provision in a contract is proof of liability. Further, the rental agreement includes a provision that states, "Renter must abide by all laws enacted by the Federal government . . . ." (Dkt. No. 22-1, at 2). The Court declines at this stage of the litigation on the record before it to address any issues of indemnity.

For these reasons, based on the record before the Court at this time and construing all reasonable inference from the record evidence in favor of the MNK defendants, the Court determines that there are genuine issues of material fact in dispute regarding the MNK defendants' alleged liability under § 605.

### B. Damages Under § 605

Under § 605, a court may grant injunctive relief, award damages, and direct the recovery of full costs, including reasonable attorney's fees. 47 U.S.C. § 605(e)(3)(B). An aggrieved party may then elect to recover actual or statutory damages. 47 U.S.C. § 605(e)(3)(C). The statute authorizes damages for "each violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). If the violation was committed "willfully and for the purpose of commercial advantage or private financial gain," the court may award up to $100,000 in enhanced damages. 47 U.S.C. § 605(e)(3)(C)(ii). The statute further provides, "In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." 47 U.S.C. § 605(e)(3)(C)(iii). J & J Sports seeks both statutory damages and enhanced damages against the MNK defendants. As there are genuine issues of mater fact in dispute surrounding the

13

circumstances related to the broadcast of the Program and the MNK defendants' alleged liability, the Court will not decide the issue of damages at this stage of the proceedings.

## V. Conclusion

For these reasons, the Court denies J & J Sports' motion for summary judgment (Dkt. No. 15). The Court overrules J & J Sports' objections to the MNK defendants' evidence and declines to strike that evidence under Federal Rule of Civil Procedure 37(c)(1).

So ordered this 31st day of March, 2019.

*Kristine G. Baker*
Kristine G. Baker
United States District Judge